**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| KATHERINE FINGER, | ) Case No. |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS** |
| | ) **OF THE FEDERAL SECURITIES** |
| NUVASIVE, INC., J. CHRISTOPHER BARRY, AMY BELT RAIMUNDO, DANIEL J. WOLTERMAN, JOHN DEFORD, LESLIE V. NORWALK, ROBERT F. FRIEL, R. SCOTT HUENNEKENS, SIDDHARTHA KADIA, and VICKIE L. CAPPS, | ) **LAWS** |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Katherine Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against NuVasive, Inc. ("NuVasive" or the "Company") and the members of NuVasive's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge NuVasive with Globus Medical, Inc. ("Globus Medical") (the "Proposed Transaction").

2. On February 8, 2023, NuVasive entered into an Agreement and Plan of Merger with Globus Medical and Globus Medical's subsidiary, Zebra Merger Sub, Inc. ("Merger Sub")

(the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into NuVasive, with NuVasive surviving as a wholly owned subsidiary of Globus Medical and NuVasive shareholders receiving 0.75 shares of Globus Medical Class A common stock for each share of NuVasive common stock they own.  Upon closing of the Proposed Transaction, NuVasive shareholders are expected to own approximately 28% of the combined company's common stock, with Globus Medical shareholders owning approximately 72% of the combined company's common stock.

3. On March 28, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that NuVasive stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Globus Medical, NuVasive and the combined company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor BofA Securities, Inc. ("BofA"); and (iii) potential conflicts of interest faced by Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as NuVasive stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for NuVasive stockholders to vote on the Proposed Transaction is currently scheduled for April 27, 2023.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and NuVasive's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of shares of NuVasive common stock.

10. Defendant NuVasive is a Delaware corporation, with its principal executive offices located at 12101 Airport Way, Broomfield, Colorado 80021. NuVasive's shares trade on the Nasdaq Global Select Market under the ticker symbol "NUVA."

11. Defendant J. Christopher Barry has been Chief Executive Officer and a director of the Company at all relevant times.

12. Defendant Amy Belt Raimundo has been a director of the Company at all relevant times.

13. Defendant Daniel J. Wolterman has been Chairman of the Board and a director of the Company at all relevant times.

14. Defendant John DeFord has been a director of the Company at all relevant times.

15. Defendant Leslie V. Norwalk has been a director of the Company at all relevant times.

16. Defendant Robert F. Friel has been a director of the Company at all relevant times.

17. Defendant R. Scott Huennekens has been a director of the Company at all relevant times.

18. Defendant Siddhartha Kadia has been a director of the Company at all relevant times.

19. Defendant Vickie L. Capps has been a director of the Company at all relevant times.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. NuVasive is a global medical technology company focused on developing, manufacturing, selling and providing procedural solutions for spine surgery, with a guiding purpose to transform surgery, advance care and change lives. The Company offers a comprehensive portfolio of procedurally integrated spine surgery solutions, including surgical access instruments, spinal implants, fixation systems, biologics, and enabling technologies, as well as systems and services for intraoperative neuromonitoring. NuVasive also develops and sells magnetically adjustable implant systems for spine and specialized orthopedic procedures. NuVasive sells its products to patients, surgeons, hospitals, and insurers through independent sales agents, directly employed sales personnel, and distributors in the United States and internationally.

**The Proposed Transaction**

22. On February 9, 2023, NuVasive announced that it had entered into the Proposed Transaction, stating, in relevant part:

> AUDUBON, Pa. and SAN DIEGO, Feb. 9, 2023 /PRNewswire/ -- Globus Medical (NYSE: GMED), a leading musculoskeletal solutions company, and NUVASIVE (NASDAQ: NUVA), the leader in spine technology innovation, today announced they have entered into a definitive agreement to combine in an all-stock transaction. The transaction brings together two well-regarded technology companies in the musculoskeletal industry, which have a shared vision focused on innovation in a relentless pursuit of unmet clinical needs to improve patient care.
>
> Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, NuVasive shareholders will receive 0.75 of a share of Globus Medical Class A common stock for each share of NuVasive common stock owned at the closing of the transaction. Based on this exchange ratio, the implied share price for NuVasive would be $57.72, an equity value of $3.1 billion, based on Globus Medical's closing share price on February 8. Following the close of the transaction, NuVasive shareholders will own approximately 28% of the combined company, and Globus Medical shareholders will own approximately 72%, on a fully diluted basis.
>
> "This transaction reflects our mission to become the leading musculoskeletal technology company in the world by developing products that promote healing in patients with musculoskeletal disorders," said Dan Scavilla, president and chief executive officer of Globus Medical. "With NuVasive, we can help support more patients through leading innovation and expanding our commercial reach to provide superior service to our surgeon and hospital partners. We look forward to combining the NuVasive and Globus Medical teams to capitalize on the many opportunities to improve patient care and create sustainable shareholder value."
>
> "Our combination with Globus Medical is transformative, joining two companies with highly complementary capabilities, geographic footprints and customer bases," said Chris Barry, chief executive officer of NuVasive. "Together, we will be able to offer an exceptional portfolio of clinically proven solutions, supported by strong commercial and surgeon education teams. The new company will be well-positioned to deliver value creation for shareholders, further support our surgeon partners—and most importantly, change the lives of more patients."
>
> **Strategic and Financial Benefits**
>
> - **Complementary global scale and expanded commercial reach.** The transaction accelerates each company's globalization strategy to target the $50 billion musculoskeletal market, which includes spine, orthopedics, enabling

technology, power tools, biologics and more. Together, Globus Medical and NuVasive will have a presence in more than 50 countries with more than 5,000 employees. The new organization's larger commercial sales organization will enable it to further penetrate existing and future markets, reaching more surgeons and patients around the world.

- **Comprehensive and innovative portfolio in spine and orthopedics.** The transaction pairs Globus Medical's and NuVasive's complementary spine and orthopedic solutions and enabling technologies to create one of the most comprehensive, innovative offerings in the industry.

- **Continued commitment to product development and surgeon education**. Globus Medical and NuVasive both have strong records of developing technology that solves unmet clinical needs for the treatment of musculoskeletal disorders. Globus Medical will continue to prioritize collaboration with healthcare professionals to develop these ground-breaking products and solutions to treat the full continuum of care from planning to execution to postoperative data.

- **Expands operational capabilities.** The company will leverage operational excellence capabilities to further unlock manufacturing capacity and asset utilization to support the commercial organization. Globus Medical and NuVasive will benefit from their respective operational advantages—including but not limited to Globus Medical's strong, in-house manufacturing capacity and NuVasive's global distribution networks, including NuVasive's Memphis-based global distribution center.

- **Compelling upside revenue potential**. The Globus Medical and NuVasive product, customer, and geographic footprints are highly complementary. As a result, through this transaction, the combined company expects to serve more surgeon customers with more solutions in more geographies around the world, creating compelling growth opportunities over the long-term.

- **Strong financial profile and value creation opportunity.** The combined companies have strong track records of delivering above-market net sales growth, through their innovation and commercial channels. The company will leverage Globus Medical's financial rigor and discipline as it aims to deliver a mid-30-percent EBITDA profile over the next three years, which includes approximately $170 million in identified cost synergies.

**Leadership**

Upon closing of the transaction, the combined company will have an eleven-member board composed of all eight directors from Globus Medical's board and three directors from NuVasive's board.

David Paul, Chairman of the Globus Medical board of directors, will serve as Chairman of the combined company's board of directors, Dan Scavilla will serve as chief executive officer and as a member of the board, Keith Pfeil, chief financial officer of Globus Medical, will serve as chief financial officer of the combined company, and Chris Barry, chief executive officer of NuVasive, will support integration planning of the combined company.

Globus Medical's and NuVasive's executive leadership teams will be actively involved in integration planning. Integration efforts will be focused on ensuring continued sales and innovation execution, retaining critical talent, and delivering on growth and cost synergies.

**Approvals and Time to Close**

The transaction is expected to close in the middle of 2023, subject to the approval of both companies' shareholders, regulatory approval, and other customary closing conditions.

**The Materially Incomplete and Misleading Proxy Statement**

23.  On March 28, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that NuVasive stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Globus Medical, NuVasive and the combined company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor BofA; and (iii) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Globus Medical, NuVasive and the Combined Company*

24.  The Proxy Statement fails to disclose material information concerning the financial projections for Globus Medical, NuVasive and the combined company.

25.  For example, according to the Proxy Statement, Globus Medical management prepared and provided to NuVasive and BofA certain "Globus Standalone Projections," which

NuVasive and BofA relied upon "except that the calculation of Globus's Unlevered Free Cash Flow [disclosed in the Proxy Statement] differs from NuVasive's calculation of Globus's Unlevered Free Cash Flow (which was provided to BofA Securities and used for purposes of its analyses)." Proxy Statement at 103. The Proxy Statement further discloses that:

> NuVasive's calculation of Globus's Unlevered Free Cash Flow refers to Globus's Adjusted Operating Income, less taxes, plus depreciation, less change in net working capital, less capital expenditures and less projected payments for Acquisition of Business and Business Acquisition Liabilities. Globus's Adjusted Operating Income is defined as Globus's Adjusted EBITDA less stock-based compensation, less depreciation.

*Id.* The Proxy Statement fails, however, to disclose NuVasive's calculation of Globus Medical's Unlevered Free Cash Flow over the projection period, which was utilized by BofA in connection with the financial analyses underlying its fairness opinion, or the underlying line items utilized by NuVasive to calculate Globus Medical's Unlevered Free Cash Flows.

26.     With respect to the "Globus Standalone Projections," the Proxy Statement further fails to disclose all line items underlying (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

27.     Similarly, with respect to the "NuVasive LRBP," the "NuVasive Standalone Projections," and the "Revised NuVasive Standalone Projections," the Proxy Statement fails to disclose all line items underlying (i) Adjusted Operating Income; (ii) Adjusted EPS; and (iii) Unlevered Free Cash Flow, as applicable.

28.     In addition, with respect to the "NuVasive Combined Company Projections," the Proxy Statement fails to disclose all line items underlying Adjusted EBITDA. To the extent it was calculated, the Proxy Statement further fails to disclose Unlevered Free Cash Flow over the projection period and the underlying line items.

*Material Misrepresentations and/or Omissions Concerning BofA's Financial Analyses*

29. The Proxy Statement fails to disclose material information concerning BofA's financial analyses.

30. With respect to BofA's *Discounted Cash Flow Analysis* of NuVasive, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) NuVasive's fiscal year 2027 estimated adjusted EBITDA; (iii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; and (iv) the Company's net debt as of the end of the fourth quarter of fiscal year 2022.

31. With respect to BofA's *Selected Publicly Traded Companies Analysis* of NuVasive, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies analyzed by BofA.

32. With respect to BofA's analysis of selected precedent transactions for NuVasive, the Proxy Statement fails to disclose: (i) the identities of the transactions analyzed by BofA; (ii) the individual multiples and financial metrics for each of the selected transactions analyzed by BofA; and (iii) the individual premiums for each of the target companies analyzed by BofA.

33. With respect to BofA's analysis of equity research analyst price targets for NuVasive, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

34. With respect to BofA's *Discounted Cash Flow Analysis* of Globus Medical, in addition to the unlevered free cash flows over the projection period, the Proxy Statement fails to disclose a quantification of: (i) Globus Medical's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; and (iii) Globus Medical's net debt as of the end of the fourth quarter of fiscal year 2022.

35. With respect to BofA's *Selected Publicly Traded Companies Analysis* of Globus Medical, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies analyzed by BofA.

36. With respect to BofA's analysis of equity research analyst price targets for Globus Medical, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

37. With respect to BofA's *Has/Gets Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the net present value of the assumed synergies and dis-synergies; (ii) the decreased cash from the merger to the combined company; (iii) the terminal values for the assumed synergies and dis-synergies beyond 2027; and (iv) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

38. The Proxy Statement fails to disclose material information concerning Company insiders' potential conflicts of interest.

39. Specifically, the Proxy Statement fails to disclose whether any of Globus Medical's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation. The Proxy Statement similarly fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Globus Medical and NuVasive management, including who participated in all such communications, when they occurred and their content.

40. In sum, the omission of the above-referenced information renders statements in the "Certain Globus Unaudited Prospective Financial Information," "Certain NuVasive Unaudited

Prospective Financial Information," "Opinion of NuVasive's Financial Advisor," "Background of the Merger," and "Interests of NuVasive Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of NuVasive will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and NuVasive**

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. NuVasive is liable as the issuer of these statements.

43. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

44. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on

the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

46. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

47. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of NuVasive within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of NuVasive and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

53. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of NuVasive, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

13

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 30, 2023                                   **LONG LAW, LLC**

By */s/ Brian D. Long*
Brian D. Long (#4347)
**OF COUNSEL:**                                          3828 Kennett Pike, Suite 208
Wilmington, DE 19807
**ACOCELLI LAW, PLLC**                                   Telephone: (302) 729-9100
Richard A. Acocelli                                      Email: BDLong@longlawde.com
33 Flying Point Road, Suite 131
Southampton, NY 11968                                    Attorneys for Plaintiff
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

14